IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

TROY J. JACKSON,

       Plaintiff,

   v.                                              No.6:10-cv-06342-SI

FEDERAL NATIONAL MORTGAGE          **OPINION AND ORDER**
ASSOCIATION, INC., BANK OF AMERICA,
N.A., and RECONTRUST CO., N.A.,

       Defendants.

Terrance J. Slominski
David W. Venables
7100 S.W. Hampton, Suite 101
Tigard, Oregon 97223

      Attorneys for Plaintiff

Pilar C. French
Dominic G. Colletta
Lane Powell
601 S.W. Second Avenue, Suite 2100
Portland, Oregon 97204

      Attorneys for Defendants

Opinion and Order, Page 1

**SIMON, District Judge.**

Plaintiff, Troy Jackson, seeks declaratory relief to set aside the non-judicial foreclosure sale of his home, located in Marion County, Oregon ("the Property"). Plaintiff also alleges breach of contract and wrongful foreclosure and seeks money damages. Defendants are Federal National Mortgage Association ("FNMA" or "Fannie Mae"), which purchased the Property at the foreclosure sale; Bank of America, N.A. ("BofA"), successor in interest to the servicer of Plaintiff's loan; and ReconTrust Company, N.A. ("ReconTrust"), the successor trustee of the Deed of Trust ("DOT") that created a lien on the Property. Defendants have moved for summary judgment against all claims. (Dkt. 29.) Defendants' motion is GRANTED IN PART AND DENIED IN PART. Plaintiff's claims are dismissed, except for those portions of Plaintiff's claims that allege that Defendants failed to record all assignments of the DOT before holding a non-judicial foreclosure sale, as required by Or. Rev. Stat. §§ 86.735(1), which is part of the Oregon Trust Deed Act ("OTDA"), Or. Rev. Stat. §§ 86.705, *et seq.*

## I. BACKGROUND

In March 2007, Plaintiff signed two promissory notes ("Notes") payable to Countrywide Bank, N.A., BofA's predecessor in interest, for $256,000 and $32,000. Declaration of Dominic Colletta ("Colletta Decl.") (Dkt. 31), Exs. 1, 2. Only the note for $256,000 (the "Note") is at issue in this case. The Note was secured by a DOT on the Property dated March 2, 2007. *Id.* at Ex. 3. Mortgage Electronic Registration Systems ("MERS") was named in the DOT as the beneficiary. *Id.* On or about March 28, 2007, MERS recorded on its own books and records, as a "Milestone" for Plaintiff's Note, "Transfer Beneficial Rights 03/28/2007" to Fannie Mae. Declaration of David W. Venables ("Venables Decl.") (Dkt. 34), Ex. 1. As discussed below,

Opinion and Order, Page 2

there was no public recording of any transfer of beneficial interest to Fannie Mae until March 19, 2010, three days after the non-judicial foreclosure sale was held.

Plaintiff became delinquent on the Note on March 1, 2009. Plaintiff sent letters to BofA on July 13, 2009, and again on December 12, 2009, requesting a loan modification pursuant to the Home Affordable Mortgage Plan ("HAMP").[1] *Id.* at Ex. 6, 7.

On August 3, 2009, MERS appointed ReconTrust as successor trustee of the DOT; the appointment was recorded in Marion County on August 6, 2009. Colletta Decl., Ex. 12. ReconTrust executed a Notice of Default and Election to Sell ("NOD") on August 3, 2009, which was also recorded in Marion County on August 6, 2009. *Id.* at Ex. 14.

On December 23, 2009, in response to Plaintiff's request for a loan modification, BofA sent Plaintiff a Trial Period Plan ("TPP"),[2] showing a "Trial Period Plan Effective Date" of February 1, 2010. Under the TPP, Plaintiff was to make three reduced monthly loan payments of $1,612 each, due February 1, 2010, March 1, 2010, and April 1, 2010. *Id.* at Ex. 8.

The TPP is in the form of a letter and states, in relevant part:

---

[1] HAMP is a program created by the United States Department of Treasury pursuant to the Emergency Economic Stabilization Act of 2008 and the Troubled Asset Relief Program ("TARP"). *See Morales v. Chase Home Finance LLC*, 2011 WL 1670045 (N.D. Cal. April 11, 2011), *Wigod v. Wells Fargo Bank*, No. 11-1423, 2012 WL 727646 *2-3 (7th Cir. Mar. 7, 2012). TARP required the Secretary of the Treasury ("Secretary") to implement a plan seeking to "maximize assistance for homeowners and . . . encourage the servicers of the underlying mortgages . . . to take advantage of . . . available programs to minimize foreclosures." 12 U.S.C. § 5219(a). In the TARP legislation, Congress also granted the Secretary the authority to "use loan guarantees and credit enhancements to facilitate loan modifications to prevent avoidable foreclosures." *Wigod*, 2012 WL 727646 *2; *see also Jackson v. Ocwen Loan Servicing, LLC*, 2011 WL 587587 (E.D. Cal. Feb. 9, 2011).

[2] The TPP is a uniform instrument with signature lines for the lender and the borrower and "includes distinctly contractual phrases such as 'under seal' and 'time is of the essence.'" *Durmic v. JP Morgan Chase Bank, NA*, 2010 WL 4825632 *1 & n. 4. (D. Mass. Nov. 24, 2010).

Opinion and Order, Page 3

> If I am in compliance with this Trial Period Plan ("the Plan") and my representations in Section 1 continue to be true in all material respects, then the Servicer will provide me with a [HAMP] Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. . . .
>
> If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to permit verification of all of my income . . . to determine whether I qualify for the offer described in this Plan ("the Offer"). I understand that after I sign and return two copies of this Plan to the Servicer, the Servicer will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer. This Plan will not take effect unless and until both I and the Servicer sign it and the Servicer provides me with a copy of this Plan with the Servicer's signature.

*Id.*

The next paragraph, titled "My Representations," states, in relevant part: "I am providing or already have provided documentation for all income that I receive." Section 2 of the letter provides, in relevant part:

> **The Trial Period Plan.** On or before each of the following due dates, I will pay the Servicer the amount set forth below ("Trial Period Payment"), which includes payment for Escrow items, including real estate taxes, insurance premiums and other fees, if any, of U.S. $1,612.00. [showing Trial Period Payments of $1,612.00 due "on or before" February 1, 2010, March 1, 2010, and April 1, 2010].
>
> During the period ("the Trial Period") commencing on the Trial Period Effective Date and ending on the earlier of: (1) the first day of the month following the month in which the last Trial Period Payment is due ("the Modification Effective Date" or (ii) termination of this Plan, I understand and acknowledge that:
>
> A.    TIME IS OF THE ESSENCE under this Plan;
>
> B.    Except as set forth in Section 2.C below, the Servicer will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Plan, but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates, and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessary to continue the foreclosure action, all rights to such notices being hereby waived to the extent permitted by applicable law;

* * *

D.  The Servicer will hold the payments received during the Trial Period in a non-interest bearing account . . .;

E.  When the Servicer accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents;

F.  If prior to the Modification Effective Date, (I) the Servicer does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; or (iii) the Servicer determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate. . . .

G.  I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (I) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.

*Id.*

In a letter sent to Plaintiff dated February 24, 2010, BofA stated:

Thank you for your participation in the federal government's [HAMP]. The Program requires we receive certain financial information from you in order to verify your eligibility to receive a permanent loan modification. It is critical that we receive all required documentation to complete your Home Affordable Modification.

Our records indicate we are missing some required documents, or some of the documents were sent to us with missing or incorrect information. As a result, you are at risk of losing your eligibility for the program. We are unable to finalize your Home Affordable Modification until we receive the following additional and/or correct and complete information from each borrower:

Opinion and Order, Page 5

* * *

> Please return this information return this information as soon as possible or within 30 days of the date of this letter or by March 26, 2010."

Colletta Decl., Ex. 11. On March 19, 2010, BofA sent another letter to Plaintiff, asking him to "complete and fax the remaining documentation . . . as soon as possible or within 10 days of the date of this letter or *by March 29, 2010."* Venables Decl., Ex. 5. (Emphasis added by Plaintiff). Plaintiff failed to make any of the three TPP payments due on February 1, 2010, March 1, 2010, and April 1, 2010. Deposition of Troy Jackson ("Jackson Dep."), *id.* at Ex. 5, 107:23-108:25. Plaintiff did, however, make a payment on May 3, 2010. Jackson Dep. at 107:14-22, 108:19-25.

After Plaintiff missed his second TPP payment, which was due on March 1, 2010, Defendants conducted a non-judicial foreclosure sale of the Property on March 16, 2010. Defendants' Memorandum in Support of Motion for Summary Judgment ("Defs.' Memo.") (Dkt. 30), at 2 and 5; Colletta Decl., Ex. 13. At that sale, Fannie Mae acquired the Property from the successor trustee, ReconTrust, by a Trustee's Deed dated March 16, 2010. Colletta Decl., Ex. 13. Fannie Mae paid for the property at the March 16, 2010, sale by "credit bid." Venables Decl., Ex. 2 (Response to Request for Admission No. 2). According to the MERS Milestone, Fannie Mae became the beneficiary of the DOT on or about March 28, 2007. Also, in order to purchase the Property with a credit bid at the foreclosure sale, Fannie Mae must have owned Plaintiff's Loan on or before March 16, 2010.[3] As such, Fannie Mae would have been the

---

[3] A credit bid is where a creditor (including the holder of a note) bids the amount due at the foreclosure sale. This is generally permissible because any money paid to the trustee at the foreclosure sale would belong to the creditor (or the holder of the note). *See generally McFarland State Bank v. Sherry*, 338 Wis.2d 462 (Wis. App. 2011); *see also* 11 U.S.C. § 1129(b)(2)(A)(ii) (allowing a similar function of a credit bid under the Bankruptcy Code).

Opinion and Order, Page 6

beneficiary under the DOT. *See James v. ReconTrust Co.,* --- F. Supp. 2d ---, 2012 WL 653871 (D. Or. Feb. 29, 2012).

On March 19, 2010, three days after the non-judicial foreclosure sale, two documents were recorded in the public records of Marion County. First, the assignment of the DOT from MERS to Fannie Mae was recorded in Marion County on March 19, 2010, in Book 3160, Page 41. Venables Decl., Ex. 4. Second, and immediately thereafter, the Trustee's Deed conveying the Property on March 16, 2010, from ReconTrust, as successor Trustee, to Fannie Mae, was recorded in Marion County on March 19, 2010, in Book 3160, Page 42. Colletta Decl., Ex. 13; Defs' Memo. at 5 ("Federal National Mortgage Association, Inc. acquired the Property through a foreclosure sale by Trustee's Deed dated March 16, 2010, from ReconTrust, as trustee, recorded in the official records of Marion County, Oregon on March 19, 2010, in Book 3160, Page 42.").

Thus, Fannie Mae was a beneficiary under the DOT since March 28, 2007 (Venables Decl., Ex. 1) and was still a beneficiary when the non-judicial foreclosure sale was held on March 16, 2010. The assignment to Fannie Mae, however, of whatever beneficial interest MERS may have had in the DOT, if any,[4] was not recorded in the property records in Marion County until March 19, 2010, which was three days after the non-judicial foreclosure sale was held. Thus, viewing the evidence in the light most favorable to Plaintiff, at the time of the non-judicial foreclosure sale of Plaintiff's Property held on March 16, 2010, there had been a previous transfer of the beneficial interest in the DOT to Fannie Mae that had not yet been recorded.

---

[4] *See generally James* (discussing whether MERS holds any beneficial interest under a deed of trust).

Opinion and Order, Page 7

## II. PLAINTIFF'S CLAIMS

Plaintiff continues to reside on the Property. On October 19, 2010, Plaintiff brought this action for wrongful foreclosure, breach of contract, and declaratory relief. In his wrongful foreclosure claim, Plaintiff alleges that: (1) BofA failed to adhere to HAMP Guidelines providing for the temporary suspension of foreclosures during a trial period; (2) BofA failed to follow loss mitigation regulations of 12 U.S.C. § 1709, *et seq.* by foreclosing before all loss mitigation options had been considered; and (3) at the time of the foreclosure sale, Plaintiff had not failed to perform. Plaintiff requests that the court set aside the foreclosure sale and award him damages for the loss of his home, loss of reputation, and emotional distress, as well as punitive damages.

Plaintiff's second claim asserts breach of contract. Plaintiff primarily alleges that BofA breached the TPP by foreclosing on Plaintiff's house.

Plaintiff's third claim seeks a declaration that the foreclosure sale was invalid. Plaintiff alleges that: (1) "[t]he mortgage is not a Deed of Trust in compliance with" the OTDA and may not be foreclosed through a non-judicial foreclosure because it "purports to name MERS as a beneficiary in addition to the lender who was the facial and factual beneficiary under the loan secured by the mortgage" (Complaint, Dkt. 1, ¶42A); (2) there was no present default by Plaintiff that would allow a non-judicial foreclosure because Plaintiff was in a HAMP trial program; (3) the TPP stated that no foreclosure would occur during the trial program; (4) "[o]n information and belief, there were assignments of beneficial interests that were not recorded in the county records before the trustee sale as required by ORS 86.735(1)" (Complaint, Dkt. 1, ¶42D); and (5) BofA failed to comply with loss mitigation guidelines.

### III. STANDARD

A party is entitled to summary judgment if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On such a motion, the court must view the evidence in the light most favorable to the non-movant and must draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). The court may not make credibility determinations, weigh the evidence, or draw inferences from the facts. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000); *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1088 (9th Cir. 2008) (on summary judgment, court does not weigh the evidence or determine whether the plaintiff's allegations are true). Summary judgment is not appropriate if a reasonable jury viewing the summary judgment record could find by a preponderance of the evidence that the plaintiff is entitled to a verdict in his or her favor. *Davis*, 520 F.3d at 1089, citing *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1027-28 (9th Cir. 2006).

### IV. DISCUSSION

**A.    Plaintiff's Claim for Breach of Contract**

Plaintiff's breach of contract claim is based on allegations that, despite Plaintiff's alleged compliance with the TPP, BofA breached that agreement by foreclosing on Plaintiff's house. This claim does not survive Defendants' motion for summary judgment.

There is no genuine dispute over whether Plaintiff was in default on the underlying loan, and Plaintiff admitted in his deposition that he failed to make the three TPP payments that were due on February 1, 2010, March 1, 2010, and April 1, 2010. The TPP contains a "time is of the essence clause" and explicitly states that if Plaintiff has not made the required payments under

Opinion and Order, Page 9

Section 2 of the trial period plan, the TPP terminates, and upon termination, any pending foreclosure action may be "immediately resumed from the point at which it was suspended." Colletta Decl., Ex. 8. These provisions are enforceable. *See Smith by Coe v. Piluso,* 79 Or. App. 238, 241 (1986) (when mortgage or land sale contract contains time-essence provision, and payment not made on time, mortgagee or vendor may foreclose without notice and opportunity to cure "by force of the contract itself," *citing Hays v. Hug,* 243 Or. 175 (1966)). BofA, therefore, had no legal obligation to refrain from foreclosure.

In addition, to maintain a breach of contract action, Plaintiff must prove that he performed his own antecedent obligations under the contract. *Malot v. Hadley,* 86 Or. App. 687, 690 (1987). Plaintiff's breach of contract action cannot be maintained because it is undisputed that Plaintiff failed to perform his obligations under the TPP by making timely payments.

Plaintiff argues, however, that BofA extended the deadline for these payments in the February and March 2010 letters that BofA sent to Plaintiff requesting additional documentation for the trial program. Plaintiff contends that these letters gave him additional time to meet his payment obligations until at least March 26, 2010.[5] Thus, argues Plaintiff, the foreclosure sale

---

[5] Plaintiff also contends that BofA's March 1, 2010, postponement of the foreclosure sale for 30 days was a manifestation of its intent to extend Plaintiff's payment deadlines. *See* Venables Decl., Ex. 3, p. 4:

> **REQUEST NO. 5:** Admit that plaintiff's property was foreclosed in error.
>
> **RESPONSE:** [D]efendants admit that a 30-day foreclosure postponement was submitted through the Foreclosure Database on or about March 1, 2010, at the direction of an agent of Bank of America, N.A. . . .

Plaintiff overstates the meaning of Defendants' admission.

that occurred on March 16, 2010, was a breach on the TPP. Plaintiff's argument is unpersuasive. The February and March 2010 letters explicitly state that the documents being requested are for the purpose of verifying Plaintiff's entitlement to a permanent mortgage modification. There is no language in the letters stating, or even suggesting, that the due dates for the documentation are in any way connected to the due dates for Plaintiff's three required TPP payments.

Nor do the February and March 2010 letters meet the legal requirements for waiving the payment terms of the TPP. Although waiver may be accomplished unilaterally and need not be supported by consideration, a waiver must be unequivocal. *Bennett v. Farmers Ins. Co. of Oregon*, 332 Or. 138, 148, 26 P.3d 785, 792 (2001), citing *Waterway Terminals Co. v. P.S. Lord*, 242 Or. 1, 26 (1965) (a clear, unequivocal, and decisive act is required to show waiver by conduct). Nothing in either the content of the letters nor in BofA's act in sending them can fairly be said to constitute an unequivocal waiver of Defendants' right to receive, or Plaintiff's obligation to make, timely TPP payments on February 1, March 1, and April 1, 2010.

In addition, Plaintiff's breach of contract claim based on obligations created by HAMP fails because that statute does not create a private right of action. *See Vida v. OneWest Bank, FSB*, 2010 WL 5148473 *4 (D. Or. Dec. 13, 2010) (plaintiff's breach of contract claim precluded because HAMP does not provide for a private right of action); *Hemenway v. Wells Fargo, NA*, 2012 WL 512398 *4-5 (D. Or. Jan. 9, 2012) (following *Vida*); *Hoffman v. Bank of America, NA*, 2010 WL 2635773 *3 (N.D. Cal. June 30, 2010) (plaintiff was not a third-party beneficiary of the contract between HAMP servicer agreement with Fannie Mae and did not have a right to enforce HAMP because there is no private right to enforce HAMP).

B.   **Plaintiff's Claim for Wrongful Foreclosure**

Plaintiff's claim of wrongful foreclosure is based, in large part, on BofA's alleged failure to adhere to HAMP Guidelines providing for the temporary suspension of foreclosures during a trial period and alleged failure to follow loss mitigation regulations.

To the extent that Plaintiff's wrongful foreclosure claim is based on BofA's failure to adhere to HAMP guidelines, it fails. As stated above, Plaintiff's argument that HAMP creates a duty of non-foreclosure during the time a TPP is pending–or for that matter, that HAMP creates any rights whatever in the borrower–has been rejected by numerous district courts in the Ninth Circuit. *See* cases cited above; *see also Newell v. Wells Fargo Bank, N.A.*, 2012 WL 27783 *6 (N.D. Cal. Jan. 5, 2012) (dismissing, on ground of no private cause of action, claim that foreclosure sale violated HAMP regulations); *Oraha v. Metrocities Mortg., LLC*, 2012 WL 70834 *3 (D. Ariz. Jan. 10, 2012) (HAMP does not provide a private right of action against financial institutions for refusal to modify a loan, *citing Chanen v. Bank of America N.A.*, 2011 WL 5593037 *5 (D. Ariz. Nov. 17, 2011) ("the Home Affordable Modification Program does not create any legal rights for borrowers."); *Simon v. Bank of America, N.A.*, 2010 WL 2609436 (D. Nev. June 23, 2010) ("Courts have consistently held that [HAMP] does not provide borrowers with a private cause of action against lenders for failing to consider their application for loan modification, or even to modify an eligible loan."); *Ung v. GMAC Mortg.*, 2009 WL 2902434 (C.D. Cal. Sept. 4, 2009) (dismissing claim for violation of state statute on ground that receipt of TARP funds by loan servicers does not create a private right of action in borrowers).

Plaintiff also argues that two of the four prerequisites for a non-judicial foreclosure sale set out in the OTDA, Or. Rev. Stat. § 86.735, have not been met. Under § 86.735,

Opinion and Order, Page 12

> The trustee may foreclose a trust deed by advertisement and sale in the manner provided in ORS 86.740 to 86.755 if:
>
> (1) The trust deed, any assignments of the trust deed by the trustee or the beneficiary and any appointment of a successor trustee are recorded in the mortgage records in the counties in which the property described in the deed is situated; and
>
> (2) There is a default by the grantor or other person owing an obligation, the performance of which is secured by the trust deed, or by their successors in interest with respect to any provision in the deed which authorizes sale in the event of default of such provision; and
>
> (3) The trustee or beneficiary has filed for record in the county clerk's office in each county where the trust property, or some part of it, is situated, a notice of default containing the information required by ORS 86.745 and containing the trustee's or beneficiary's election to sell the property to satisfy the obligation; and
>
> (4) No action has been instituted to recover the debt or any part of it then remaining secured by the trust deed, or, if such action has been instituted, the action has been dismissed . . .

Plaintiff asserts that neither subsection (1) nor (2) was satisfied at the time of the sale.

With regard to Plaintiff's contention under subsection (2) of the OTDA that the foreclosure sale was invalid because there was no default by the grantor, this argument is without merit. As discussed above, Plaintiff has not established a genuine issue of fact that he was not in default on both the underlying loan and the TPP at the time of the foreclosure sale.

With regard to Plaintiff's contention under subsection (1) of the OTDA, however, Defendants are not entitled to summary judgment. Plaintiff has demonstrated a genuine issue of material fact on whether all assignments of the DOT had been recorded by March 16, 2010. Plaintiff offers evidence that on March 28, 2007, beneficial rights in the DOT were transferred to Fannie Mae. *See* MERS OnLine, showing as a Property "Milestone," "Transfer Beneficial

Opinion and Order, Page 13

Rights" on "3/28/07" to Fannie Mae. Venables Decl., Ex. 1. Defendants have also admitted that Fannie Mae already had a beneficial interest in the Property *before* Fannie Mae purchased the Property from ReconTrust at the foreclosure sale on March 16, 2010. *See* Venables Decl. Ex. 2:

> **REQUEST FOR ADMISSION NO. 3:** Admit that defendant Federal National Mortgage Association had a beneficial interest in the plaintiff's trust deed prior to the foreclosure sale referenced in Exhibit 1.
>
> **RESPONSE:** . . . [D]efendant admits that it had a beneficial interest in a deed of trust affecting real property as described in that certain Assignment of Deed of Trust dated March 6, 2010.

The only recorded assignment to Fannie Mae was on March 19, 2010, which was three days after the non-judicial foreclosure sale of March 16, 2010. Venables Decl., Ex. 4. Defendants argue that their admission that Fannie Mae had "a" beneficial interest in the DOT does not mean that "before the sale, Fannie Mae had *all* beneficial interest in Plaintiff's DOT." Defendants' Reply, p. 5 (emphasis in original). Defendants offer no evidentiary support for the argument, and nothing in the record before the court suggests that Fannie Mae did not acquire all of the beneficial interest in 2007. At the minimum, however, Plaintiff has created a genuine issue of fact sufficient to preclude summary judgment.

Fannie Mae has also admitted that it paid for the Property by credit bid. *See* Response to Request for Admission No. 3, Venables Decl., Ex. 2. As discussed above, only the owner of Plaintiff's loan (or the holder of the note) could pay for the Property at the foreclosure sale with a credit bid. Thus, by paying for the Property with a credit bid, Fannie Mae, at least implicitly, acknowledges that it was the beneficial owner at the time of the sale. This is also sufficient to create a disputed issue of fact on whether there was an unrecorded assignment to Fannie Mae of the beneficial interest in the DOT before the March 16, 2010 sale in violation of the OTDA.

Opinion and Order, Page 14

In their supplemental briefing, Defendants assert that the language in the OTDA that the "trustee may foreclose a trust deed by advertisement and sale . . . *if* [all assignments of the DOT have been recorded]," Or. Rev. Stat. § 86.735(1), does not mean that all such assignments must be recorded *before* the date of the sale. Defendants argue that the recording of all assignments could await the *consummation* of the foreclosure sale, which occurred three days after the sale itself, when the Trustee's Deed was recorded.

The court is not persuaded by Defendants' argument. The dictionary definition of the word "if" is "in the event that" or "in case." *See, e.g., Webster's Third New International Dictionary of the English Language* 1124 (Philip Babcock Gove, ed., 2002). Because the definition is conditional, the word "if" followed by the events described in subsections (1) through (4) does not support an interpretation that those events can occur *after* foreclosure by advertisement and sale, rather than being *preconditions* of foreclosure by advertisement and sale. Defendants also fail to cite any legal authority in support of their argument.

When interpreting a statute, the court considers the statute's context, including other parts of the statute. *In re D.S.*, 351 Or. 570 (2012), *citing Lane County v. LCDC,* 325 Or. 569, 578 (1997). When the statute is construed as a whole, Defendants' proposed interpretation contradicts the entire statutory scheme. The requirement of subsection (2), for example, that the grantor be in default, cannot be construed to mean that the grantor can be found in default sometime after the sale but before the Trustee's Deed is recorded because the sale itself may not occur unless the grantor is in default. Similarly, subsection (3), which requires a notice of default and election to sell, becomes meaningless if viewed as an event that may occur after the sale but before final recording of the transfer.

Opinion and Order, Page 15

As the court said in *Staffordshire Inv., Inc. v. Cal-Western Reconveyance Corp.*, 209 Or. App. 528, 542 (2006), the OTDA

> represents a well-coordinated statutory scheme to protect grantors from the unauthorized foreclosure and wrongful sale of property, while at the same time providing creditors with a quick and efficient remedy against a defaulting grantor. [The OTDA] confers upon a trustee the power to sell property securing an obligation under a trust deed in the event of default, without the necessity for judicial action. However, the trustee's power of sale is subject to *strict statutory rules* designed to protect the grantor, including provisions relating to notice and reinstatement.

(Emphasis added.) The court declines Defendants' invitation to interfere with this well-coordinated scheme by interpreting the OTDA to mean something other than what its plain reading and context show. Accordingly, Defendants have not met their burden on summary judgment of proving the nonexistence of a genuine issue of material fact on the question of whether all assignments of the DOT had been recorded before the sale. Summary judgment against this aspect of Plaintiff's claim of wrongful foreclosure, therefore, is inappropriate.

## C.     Plaintiff's Claim for Declaratory Relief

For the reasons stated above, full summary judgment is also inappropriate against Plaintiff's claim for declaratory relief. Partial summary is granted to the extent that Plaintiff seeks a declaration that there was no present default by Plaintiff that would allow a non-judicial foreclosure because Plaintiff was in a HAMP trial program, that the TPP precluded foreclosure during the trial period, or that BofA failed to comply with HAMP's loss mitigation guidelines. Defendants' motion for summary judgment, however, is denied with regard to Plaintiff's request for a declaration that Defendants' non-judicial foreclosure was not in compliance with OTDA because there is at least a genuine issue of material fact concerning whether there were one or

more assignments of the beneficial interest that were not recorded before the non-judicial foreclosure sale occurred, which is a violation of the OTDA.

Finally, Defendants' post-argument, supplemental brief addresses not only the issue of whether all assignments of the DOT occurred before the foreclosure sale, but also other matters not raised in Defendants' original motion for summary judgment. These issues include: (1) whether Plaintiff's challenge to the foreclosure is barred by Or. Rev. Stat. § 86.770(1); and (2) whether Oregon law conditions equitable relief on Plaintiff's ability to cure his default. Because these issues were not raised in Defendants' motion for summary judgment, and thus have not been briefed by Plaintiff, the court declines to rule on these issues at this time.

## V. CONCLUSION

Defendants' motion for summary judgment on all claims (Dkt. 29) is GRANTED IN PART AND DENIED IN PART. Plaintiff's claims are dismissed, except for those portions of Plaintiff's claims that allege that Defendants failed to record all assignments of the DOT before holding a non-judicial foreclosure sale.

IT IS SO ORDERED.

Dated this 26th day of March, 2012.

_____
Michael H. Simon
United States District Judge